IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LOWELL FRAZIER,

      Plaintiff,

v.                                        Civil Action No. 2:05-cv-00482

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are the Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Judgment on the Pleadings.

    Plaintiff, Lowell Frazier (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on December 23,

2002, alleging disability as of August 1, 2002, due to stress, tuberculosis, emphysema, depression, and acid reflux.  (Tr. at 51, 68.)  The claims were denied initially and upon reconsideration. (Tr. at 34, 41.)  On February 10, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 44.) The hearing was held on November 3, 2004 before the Honorable James D. Kemper, Jr.  (Tr. at 260.)  By decision dated January 7, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20.)  The ALJ's decision became the final decision of the Commissioner on April 15, 2005, when the Appeals Council denied Claimant's request for review.  (Tr. at 4-6.)  On June 13, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2004).  If an individual is found "not

disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14; Finding No. 2, tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of chronic obstructive pulmonary disease. (Tr. at 15-16; Finding No. 3, tr. at 19.) At the third inquiry, the ALJ concluded that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16; Finding No. 4, tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 18; Finding No. 7, tr. at 19.) Claimant's residual functional capacity did not preclude performance of his past relevant work as a non-emergency transport driver, tow motor operator, and truck driver. (Tr. at 18; Finding No. 11, tr. at 20.) The ALJ concluded that Claimant could also perform jobs at the medium work level such as a general production inspector and a stock clerk. At the light level, Claimant could perform jobs as a kitchen worker and marker/labeler. He could also perform jobs at a sedentary level as a bench worker and security monitor. (Tr. at 18; Finding No. 12, tr. at 20.) All of these exist in significant numbers in the

national economy. (Tr. at 18; Finding No. 12, tr. at 20.) On this basis, benefits were denied. (Tr. at 19; Finding No. 13, tr. at 20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 46 years old at the time of the administrative hearing. (Tr. at 260.) He has a high school education and 1 1/2 years of training in automobile body repair. (Tr. at 261.) In the past, he worked as a non-emergency transport driver, a tow motor operator, and a truck driver. (Tr. at 76, 264.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant's treating physician during the periods of April, 2001 to July, 2001 and June, 2003 to January, 2004 was Charles Vance, M.D. (Tr. at 221-30.) In April 2001, Dr. Vance diagnosed chronic obstructive pulmonary disease (COPD). (Tr. at 227.) X-rays of Claimant's lungs confirmed COPD with hyperinflation of the lungs, but showed no acute pulmonary pathology or congestive heart failure (CHF). (Tr. at 226.) Dr. Vance prescribed Zoloft and Protonix. (Tr. at 225, 227.)

In August, 2002, Claimant visited Harts Health Center with complaints of depression, stress, shortness of breath, chest pain, and insomnia. (Tr. at 109.) Chest x-rays again showed COPD, but no acute pulmonary pathology, CHF, or any significant interval change. (Tr. at 113.) The examining physician prescribed Zoloft. (Tr. at 109.) Claimant returned to the Center several more times with similar complaints. (Tr. at 102-7.) A pulmonary function report in April 2003 showed a mild obstructive pulmonary

impairment. (Tr. at 101.)

Claimant attended the Prestera Center for counseling from April 2003 through October 2003. (Tr. at 147-93.) Initially, Claimant reported feeling depressed due to his father's death. (Tr. at 175.) He indicated that he suffered depressed mood, sleep problems, low energy level, increased appetite, poor concentration, and indecisiveness. (Tr. at 175.) He appeared mildly depressed, but displayed a broad affect and average intelligence. (Tr. at 173.) Claimant had no evidence of delusional thinking, and was goal directed with fair insight and judgment. (Tr. at 175-6.) The examining psychologist ranked Claimant's GAF at 60. He diagnosed major depressive disorder, moderate, recurrent; and anxiety disorder NOS, rule out general anxiety disorder. (Tr. at 176.) Claimant's prognosis was good. Id.

On June 18, 2003, Mark Carter, M.D. conducted a consultative examination of Claimant. (Tr. at 115-18.) Dr. Carter noted shortness of breath on exertion with a history of heavy smoking abuse. (Tr. at 117.) Dr. Carter conducted pulmonary function tests as well as x-rays, which showed that Claimant's lungs were clear. Claimant's cardiac exam was normal. (Tr. at 116.)

Claimant alleged that he had previously been diagnosed with tuberculosis after a positive skin test; however, he had not been treated. (Tr. at 117.) Claimant did not suffer any weight loss, night sweats, or cough. (Tr. at 117.) Claimant also described his

reflux symptoms, but had no history of gastrointestinal bleed. (Tr. at 117.) Based on these test results and his examination, Dr. Carter diagnosed moderate obstructive airway disease and gastroesophageal reflux disease. (Tr. at 117.)

State agency medical source Cynthia Osborne, D.O. completed a Physical Residual Functional Capacity Assessment form on July 4, 2003. (Tr. at 123-31.) She opined that Claimant could occasionally lift fifty pounds and could frequently lift twenty-five pounds. He could stand and/or walk as well as sit for six hours of an eight hour work day, and had no restrictions on his ability to push and/or pull. (Tr. at 124.) Dr. Osborne opined that Claimant should avoid concentrated exposure to extreme heat or cold, wetness, and humidity, and should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. at 127.)

Dr. Osborne opined that Claimant's pulmonary function score showed mild obstructive disease, and that his acid reflux was relieved by medication. (Tr. at 128.) Claimant required no assistance with activities of daily living. Dr. Osborne concluded that Claimant was capable of medium level work with avoidance of the environmental irritants she listed. (Tr. at 128.)

State agency psychologist Joseph Kuzniar, Ed.D., completed a Psychiatric Review Technique form on July 14, 2003. (Tr. at 132-45.) He found that Claimant's symptoms of affective disorders and

8

anxiety-related disorders were not severe, and resulted in only mild limitations of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. at 132, 142.)

Prestera Center staff completed an adult Multi-Disciplinary Social History questionnaire in July 2003. (Tr. at 151-67.) Evaluators concluded that Claimant had only mild dysfunction in the areas of self care, activities of community living, social/interpersonal/family skills, concentration, and task performance. (Tr. at 161-64.)

Thereafter, in August 2003, Claimant attended Prestera for individual therapy. He reported that medications helped his symptoms, and that he had improved. Claimant stated that he ran out of medications about one and one-half months prior to this visit, and that his symptoms had then worsened without them. (Tr. at 149.) He exhibited a depressed mood and anxiety; however, his memory and recall were 3/3 after five (5) minutes. Physicians prescribed Zoloft and Vistaril. Id.

At a follow-up visit on September 20, 2003, Claimant reported that he was not feeling depressed, but still felt anxious at times. He described difficulty in falling asleep, but slept 5-8 hours. (Tr. at 148.) His mood was calm, affect appropriate, and his speech was clear and coherent. Physicians noted that he had shown improvement, and that his medication regimen should be continued

with an increase in Vistarel as a sleep aid.  (Tr. at 148.)

In an Interpretive Summary Note dated October 14, 2003, staff at Prestera Center described Claimant as mildly impaired in his level of functioning, and indicated that his GAF remained at 60. (Tr. at 147.)

State agency medical source Fulvio Franyutti, M.D. completed a second physical residual functional capacity review on December 24, 2003.  (Tr. at 194-201.)  Dr. Franyutti concurred with Dr. Osborne's opinions as to Claimant's exertional abilities, except that he limited Claimant to climbing ladders, ropes and scaffolds only occasionally.  (Tr. at 196.)  Dr. Franyutti opined that Claimant should avoid concentrated exposure to extreme heat, cold, and hazards, as well as fumes, odors, dusts, gases and poor ventilation. (Tr. at 198.) After considering Claimant's shortness of breath and gastroesophageal reflux disease, Dr. Franyutti reduced Claimant's work capacity to medium, with the specific limitations described above.  (Tr. at 199.)

Frank Roman, Ed.D. completed a second Psychiatric Review Technique form on behalf of the State on January 8, 2004. (Tr. at 202-16.)  He concluded that Claimant suffered an anxiety-related disorder and an affective disorder, but that these were not severe. (Tr. at 202.)  His ratings of Claimant's functional limitation matched those of prior reviewer, Dr. Kuzniar.  (Tr. at 212.)

On March 24, 2004, Dr. Vance completed a Medical Assessment of Ability to do Work-Related Activities (Physical) form. (Tr. at 231-33.) He opined that Claimant was unable to lift over 10 pounds occasionally due to shortness of breath secondary to COPD. (Tr. at 231.) Claimant had no limitations in standing, walking or sitting, but could only climb occasionally. (Tr. at 232.) Claimant's ability to push and/or pull was limited to his shortness of breath. Claimant should avoid chemicals, dust, fumes, humidity and vibration due to his COPD as well. (Tr. at 233.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly consider the Commissioner's Residual Functional Capacity Assessments; and failed to properly consider Claimant's mental limitations, alone and in combination with his other impairments, in determining his functional capacity. (Pl.'s Br. at 7-10.) The Commissioner responds that the ALJ's decision was supported by substantial evidence in all respects. (Def.'s Br. at 9-13.)

SSR 96-6p requires an ALJ to treat state agency medical and psychological consultants' findings concerning a claimant's impairments as expert opinion evidence of nonexamining sources. It further requires that the ALJ must explain the weight given to these opinions. SSR 96-6p.

Claimant argues that the ALJ herein failed to explain the

weight he gave to the opinions of state agency physicians, Drs. Osborne and Franyutti. (Pl.'s Br. at 8.) He argues that the ALJ adopted Dr. Franyutti's less restrictive conclusions as to environmental restrictions without explaining why he rejected Dr. Osborne's opinion. Specifically, while Dr. Osborne opined that Claimant should avoid even <u>moderate exposure</u> to fumes, odors, dusts, gases, and poor ventilation; Dr. Franyutti advised that only <u>concentrated exposure</u> to such irritants must be avoided. (Tr. at 198, 127.) On the other hand, while Dr. Osborne found that Claimant had no postural limitations, Dr. Franyutti recommended that Claimant avoid climbing ladders, ropes, and scaffolds, while occasionally climbing ramps or stairs. (Tr. at 125, 196.)

The ALJ did not explain why he accepted or rejected either of these conclusions; however, he cited to both of them and stated that he did not find a basis to reduce Claimant's residual functional capacity beyond what they prescribed. (Tr. at 18.) While he did not announce that he adopted Dr. Franyutti's opinion as to environmental restrictions, the ALJ did explain his conclusion that Claimant need only avoid <u>concentrated exposure</u> to dust, fumes, gases, poor ventilation and hazards:

> While he [Claimant] has ongoing breathing difficulties, he continues to smoke and requires only routine conservative follow up. He has not required emergency care or hospitalization for exacerbation of his symptoms and physical examination by Dr. Carter revealed clear lung fields, while chest x-ray noted hyperinflation without mass,

12

> infiltrate, or effusion. Despite his breathing impairment, he was observed to be able to perform all range of motion maneuvers without aggravating his condition, and per recent testimony, he remains capable of independently performing basic activities of daily living.

(Tr. at 18.)

The court finds that the above adequately explains the ALJ's reasons for rejecting Dr. Osborne's more restrictive opinion as to environmental limitations (i.e., that Claimant must avoid even <u>moderate</u> exposure to environmental irritants.) While the opinion could have included a direct citation to Dr. Franyutti's review, the fact that such citation was omitted does not undermine the sound rationale of the opinion.

The ALJ also adopted Dr. Franyutti's more restrictive opinion as to exertional limitations: he concluded that the Claimant should never climb ladders, ropes, or scaffolds, and should only occasionally climb ramps and stairs. (Tr. at 18.) Claimant presumably would agree with the ALJ's adoption of this restriction.

As the Commissioner points out, the job of driver does not involve any exposure to environmental conditions, nor does it require the postural limitations at issue in this case. <u>Dictionary of Occupational Titles</u>, 913.663-018. This job does not involve exposure to wetness or humidity. <u>Id.</u> Accordingly, Claimant could perform his past work as a driver under either source's recommendation, and substantial evidence supports the ALJ's

13

decision.

Finally, Claimant argues that the ALJ failed to consider his impairments in combination, and wrongly discounted his mental limitations. (Pl.'s Br. at 9.) However, the ALJ acknowledged his duty to consider Claimant's impairments in combination and thoroughly summarized Claimant's medical records. (Tr. at 14-16.) He found that despite his allegations of a severe mental impairment, Claimant submitted no evidence of mental health treatment since October 2003, and was capable of attending to basic activities of daily living. (Tr. at 17.) He considered Claimant's alleged mental impairments together with his physical ailments—-indeed, discussed them in the same paragraph on page 17---but determined that Claimant was not credible as to the degree of his alleged mental impairment. (Tr. at 17.) Instead, the ALJ found that the evidence supported only a mild limitation in this area. (Tr. at 15-16, 17.) He then expressly stated that

> after reviewing all of the evidence, including the medical records, and considering the interactive and cumulative effects of all medically determinable impairments, including any impairments that are "severe" and/or "non-severe", the undersigned finds that the [C]laimant does not have a combination of impairments that meet or medically equal any listed impairment in Appendix 1 to subpart P of Regulations No. 4.

(Tr. at 16.)

Based on the above, the court finds that the ALJ properly considered Claimant's mental impairment as well as his impairments

in combination, and that substantial evidence of record supported his decision.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** judgment in favor of Defendant, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this written opinion and order and to mail a copy of the same to counsel of record.

    June 14, 2006
       Date

                                          */s/ Mary E. Stanley*
                                          Mary E. Stanley
                                          United States Magistrate Judge